IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00029-CV

 

Plantation Production Properties,
L.L.C.,

and also d/b/a Skyview Ranch,

Skyview Ranch, L.L.C., and Ken Watson,

                                                                      Appellants

 v.

 

Jack Meeks, Individually

and d/b/a Superior Building Systems,

                                                                      Appellees

 

 

 



From the 87th District Court

Leon County, Texas

Trial Court # 0-99-238-B

 



MEMORANDUM 
Opinion



 








       Plantation Production
Properties, Inc., Skyview Ranch, L.L.C., and Ken Watson appeal from a judgment
ordering them to pay $45,822 for a metal building built on their property by
plaintiff, Jack Meeks, at the request of a tenant.  We modify the portion of the judgment allowing
recovery on a mechanic=s and materialman=s lien because Meeks
failed to exercise due diligence in serving process upon the appellants
regarding that claim and affirm the judgment as modified.








BACKGROUND

In 1996, Jim Antley contracted with Jack Meeks to build a metal building
on what Meeks believed to be Antley=s property for $45,822.  Meeks
testified that Antley referred to himself as Skyview Ranch, and the contract
lists ASkyview Ranch c/o Jim Antley@ as a party.  After the building
was completed, Meeks requested payment from Antley.  Antley told Meeks that he would need two weeks
to come up with the money.

After waiting some time for payment, Meeks again contacted Antley.  During their conversation, Meeks learned for
the first time that Antley was not the owner of the property, but was leasing
the property from Plantation Properties, Inc. 
Plantation, as recorded in the county records, holds legal title to the property,
but the property is managed by Skyview Ranch, L.L.C.  Ken Watson is both an officer of Plantation and an officer and manager
of Skyview.  Antley provided Meeks with
information on how to contact Watson and told Meeks that Watson would pay him.

Meeks mailed statements to Watson, Skyview Ranch, and Antley.  Antley received the statement, but Skyview=s and Watson=s statements were returned.  Meeks
then mailed and faxed the statement to Watson. 
After no response, Meeks called Watson. 
Watson told Meeks that he would pay the bill if Meeks would send him an
affidavit stating Meeks had paid in full all the labor and materials used in
the construction of the building.  Meeks
faxed and mailed the requested affidavit stating that all labor and materials
had been paid for and that $45,822 remained due on the contract.  After no response, Meeks requested by fax
that Watson contact him regarding the bill, and again mailed the statement.  Meeks again received no response.  








Meeks signed a mechanic=s and materialman=s lien affidavit against the property, filed it on June 6, 1997, and sent copies of the affidavit along with a current statement to
Watson, Plantation, and Antley by certified mail, return receipt requested, by regular
mail, and by fax.  Watson and Antley
refused to claim the certified mail. 
After repeated attempts to collect payment, Meeks filed suit against Plantation, Skyview, Watson,
(collectively, AAppellants@) and Antley on May 28, 1999.  In a bench trial, the trial court found
Appellants had breached their contract to Meeks and awarded him $45,822, plus
attorney=s fees.

Appellants argue in seven issues that: (1) there is no evidence that
Appellants entered into a contract with Meeks for the construction of the barn;
(2) there is no evidence that Appellants gave Antley actual authority to
contract on their behalf with Meeks; (3) there is no evidence that Appellants
gave Antley apparent authority to contract on their behalf with Meeks; (4) the
doctrine of undisclosed principle is not applicable to Meeks=s claims; (5) the court erred in imposing the mechanic=s and materialman=s lien; (6) there is no evidence of unjust enrichment; (7) there is no
evidence that Meeks exercised due diligence in obtaining service of process
upon Appellants in regard to the lien; and (8) in the event of reversal, the
judgment for attorney=s fees should be set aside.

ACTUAL/APPARENT AUTHORITY AND RATIFICATION

Appellants argue in their second and third issues that there is no
evidence that Antley had actual or apparent authority to enter into a contract
with Meeks on Appellants= behalf.  Meeks argues that
Appellants gave Antley the authority to contract with Meeks, and in the
alternative, Appellants ratified the contract.








Meeks had the burden to prove that an agency relationship existed
between Appellants and Antley.  Royal Mortgage Corp. v.
Montague,
41 S.W.3d 721, 732-33 (Tex. App.CFort Worth 2001, no pet.).  When an appellant who did not
have the burden of proof at trial complains of legally insufficient evidence,
the appellant must show there is no evidence to support the contested
finding.  Beard v. Beard, 49
S.W.3d 40, 55 (Tex. App.CWaco 2001, pet. denied).  The
appellate court must consider only the evidence and inferences that support the
adverse finding and ignore all evidence and inferences to the contrary.  Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).  A Ano evidence@ claim will be sustained if: (a) there is a complete absence of evidence
of a vital fact, (b) the rules of law or evidence prevent the court from giving
weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is not more than a scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362‑63
(1960)).  When the evidence Arises to a level that would enable reasonable and fair-minded people to
differ in their conclusion,@ then there is more than a scintilla of evidence.  Beard, 49 S.W.3d at 55 (quoting
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)).

 AAn agent is one who
consents to act on behalf of and subject to the control of another, the
principal, who has manifested consent that the agent shall so act.@  Montague, 41 S.W.3d at 732 (citing Republic
Bankers Life Ins. Co. v. Wood, 792 S.W.2d 768, 778 (Tex. App.CFort Worth 1990, writ
denied)).  An agency relationship does
not depend upon the express appointment or assent by the principal; rather, it
may be implied from the conduct of the parties. 
Id.  An agency relationship may be found from
underlying facts or direct and circumstantial evidence showing the relationship
of the parties.  Walker Ins. Services v.
Bottle Rock Power Corp., 108 S.W.3d 538, 550 (Tex. App.CHouston [14th Dist.]
2003, no pet.); Townsend v. Univ. Hosp.‑Univ. of Colorado, 83
S.W.3d 913, 921 (Tex. App.CTexarkana 2002, pet.
denied).  An agency relationship may be
established in two ways: actual authority of the agent or apparent authority of
the agent.








Actual Authority

Actual authority is
created when the principal communicates to the agent, by words or conduct, that
the agent has authority to act on the principal=s behalf.  See Walker
Ins. Services, 108 S.W.3d at 549-50; Spring Garden 79U, Inc. v. Stewart
Title Co.,
874 S.W.2d 945, 948 (Tex. App.CHouston [1st Dist.] 1994,
no writ).  The existence of an agency
relationship based on actual authority may be implied from the conduct
of the parties or from the facts and circumstances surrounding the transaction
in question.  Walker Ins. Services, 108 S.W.3d at 550.

Actual authority is based
upon what the principal communicated to the agent.  Neither Appellants nor Antley testified at
trial.  The only witness, Meeks,
testified that he believed he was contracting directly with Antley during
negotiations, acceptance, and performance of the contract.  It was not until Meeks sought payment that he
learned of Appellants= existence.  There is no evidence as to the
communications, express or implied, between Appellants and Antley.  Therefore, there is no evidence, express or
implied, that Antley had actual authority to contract for Appellants.  Walker Ins. Services, 108 S.W.3d at
550.




Apparent Authority








Likewise, there is no
evidence that Antley had apparent authority to contract on behalf of the
Appellants.  While actual authority is
created by the principal=s conduct, express or
implied, to the agent, apparent authority is created by the principal=s conduct, express or
implied, to a third party.  See Walker
Ins. Services, 108 S.W.3d at 550; Cameron County Sav. Ass'n v. Stewart
Title Guaranty Co., 819 S.W.2d 600, 603 (Tex. App.CCorpus Christi 1991, writ
denied).  Meeks must show that Appellants
either knowingly permitted Antley to hold himself out as having
authority or showed such lack of ordinary care as to clothe Antley with indicia
of authority.  See Nations Bank v.
Dilling, 922 S.W.2d 950, 952‑53 (Tex. 1996); Walker Ins.
Services, 108 S.W.3d at 550.  Meeks
must establish conduct by Appellants that would lead a reasonably prudent
person to believe Antley had the authority he purported to exercise.  See Dilling, 922 S.W.2d at 952-53; Walker
Ins. Services, 108 S.W.3d at 550-51.  A prerequisite to a proper finding of apparent
authority is evidence that the third party (Meeks) relied on the conduct of the
principal (Appellants).  Baptist Memorial Hosp.
System v. Sampson, 969 S.W.2d 945, 949 (Tex. 1998) (citing Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984)).

Meeks testified that Watson told him he would pay for the barn.  This is an affirmative action on the part of
Appellants that would lead a reasonable person to believe that Antley was
acting as Appellants= agent.  However, the agreement to
pay for the barn occurred after the contract between Meeks and Antley was
already in place.  Meeks must prove that
he relied upon Appellants= conduct when he was contracting with Antley.  Patel v. Kuciemba, 82 S.W.3d 589, 597 (Tex. App.CCorpus Christi 2002, pet.
denied) (holding no apparent authority when reliance upon the principal to pay
back a loan occurred after the third party made the loan to the agent).  The contract was complete,
the barn built, and the time for reliance was past when Meeks first learned of
the Appellants= existence.  BML Stage Lighting, Inc.
v. Mayflower Transit, Inc., 14 S.W.3d 395, 401 (Tex. App.CHouston [14th Dist.]
2000, pet. denied) (holding no apparent authority when third party did not learn
of the existence of the principal until after he contracted with the
agent).  Therefore, we
find that there is no evidence that Antley had apparent authority.

Ratification








Meeks argues that even if Antley did not have actual or apparent
authority, the actions of the Appellants are sufficient to prove they ratified
the contract with Meeks.  The trial court=s finding of fact #30 states that Appellants ratified the contract, and
Appellants do not challenge this finding. 
Unchallenged findings of fact are binding on an appellate court unless
the contrary is established as a matter of law or there is no evidence to
support the findings.  Tarrant
Regional Water Dist. v. Gragg, 43 S.W.3d 609, 618-19 (Tex. App.CWaco 2001), aff=d, 2004 WL 1439646, 47 Tex. Sup. Ct. J. 707 (Tex. June 25, 2004) (citing McGalliard v. Kuhlmann, 722 S.W.2d
694, 696 (Tex. 1986)).

A principal ratifies an
unauthorized act if, by word or conduct, with knowledge of all material facts,
he confirms or recognizes the act as valid.  Mo. Pac. R.R. Co. v. Lely Dev. Corp., 86 S.W.3d 787, 792
(Tex. App.CAustin 2002, pet. dism'd).  The critical factor in determining whether a
principal has ratified an unauthorized act is the principal's knowledge of the
transaction, and the principal's actions once the principal acquired the
knowledge.  In re Marriage of M.C.,
65 S.W.3d 188, 192 (Tex. App.CAmarillo 2001, no
pet.).  Even if a principal was unaware
of its agent's unauthorized action, it may ratify that action if, after
acquiring full knowledge of the unauthorized action, the principal retains the
benefits of the action.  St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 536 (Tex. 2003).

Meeks testified that
Watson agreed to pay for the barn, and that during their conversation, Watson
did not seem surprised to hear that there was a barn on Appellants= property.  Evidence was also introduced that Appellants
were currently enjoying the use of the barn. 
By agreeing to pay Meeks for the contract he had with Antley, and by
retaining and using the barn, Appellants ratified the contract.  Thus, Appellants can be held liable for the
breach of the contract.  Id.  The evidence supports the trial
court=s unchallenged finding of fact that the Appellants ratified the
contract.  Mehan v. WAMCO XXVVIII
Ltd.,
138 S.W.3d 415, 419 (Tex. App.CFort Worth 2004, no
pet.); Gragg, 43 S.W.3d at 618-19. 
Therefore, we overrule Appellants= first, second, and third issues.

DUE DILIGENCE








Appellants contend in their seventh issue that the statute of
limitations bars Meeks=s claim under the mechanic=s and materialman=s lien because Meeks did not exercise due diligence in perfecting
service of citation upon them.  Meeks
responds that the Appellants have waived this issue because they did not plead
or sufficiently raise the issue before the trial court.

Waiver

Seven days before trial, Plantation and Skyview filed a first
amended petition in which they pled a statute-of-limitations defense.  Watson did not affirmatively plead such a
defense.  At the beginning of the bench
trial, Appellants= counsel stated that he was representing Plantation, Skyview, and Watson and
mentioned the statute-of-limitations defense. 
Before the closing of the evidence, Appellants= counsel asked the court to take judicial notice of the clerk=s record regarding the dates that Plantation, Skyview, and Watson were
served with process.  The trial court
asked for briefs instead of closing arguments. 
In Appellants= closing brief, which included Plantation, Skyview, and Watson,
counsel argued that Meeks had not exercised due diligence in serving
Appellants, and therefore, the mechanic=s and materialman=s lien was barred by the statute of limitations.  Meeks argued in the plaintiff=s closing brief that Appellants had waived the affirmative defense by
not pleading it.

The statute-of-limitations defense must be affirmatively pled in the
party=s pleadings.  Tex. R. Civ. P. 93.  However, if there is no objection by the
opponent that the party failed to plead the defense, the issue may be tried by
consent.  An issue is tried by consent when a party
introduces evidence relevant to the unpleaded issue without objection.  Tex.
R. Civ. P. 67; De La Morena v. Ingenieria E Maquinaria De Guadalupe,
S.A., 56
S.W.3d 652, 659 (Tex. App.CWaco 2001, no pet.).








  Plantation and Skyview raised the limitations
defense in their pleadings and produced evidence at trial.  Therefore, they have not waived the
defense.  Tex. R. Civ. P. 93. 
Watson did not plead the defense, yet raised evidence at trial and
argued the issue in his closing brief. 
Meeks generally objected to the defendants= failure to plead the limitations defense, but it is not clear from his
argument to which defendant he was objecting. 
A specific objection is required. 
Tex. R. App. P.
33.1(a)(1)(A); see R & R Contractors v. Torres, 88 S.W.3d 685, 695
(Tex. App.CCorpus Christi 2002, no pet.). 
Therefore, we find that Watson=s statute-of-limitations defense was tried by consent and is properly
before this court.  Tex. R. Civ. P. 67.




Statute-of-Limitations Defense

In order to stop the running of limitations, a plaintiff must not only
file the lawsuit within the applicable limitations period, but must also serve
the defendants with process within that period. 
Gant
v. DeLeon,
786 S.W.2d 259, 260 (Tex. 1990).  However, as long as the lawsuit
is filed within the limitations period, the plaintiff can serve the defendants
outside the period, but only if the plaintiff exercises due diligence in doing
so.  Id.; $6453.00
v. State,
63 S.W.3d 533, 536 (Tex. App.CWaco 2001, no pet.).  The exercise of due diligence
tolls the limitations period until after the defendant is served.  Id; $6453.00, 63 S.W.3d at
536.  The duty to exercise due diligence
is a continuous one, extending from the date the suit is filed until service is obtained.  Tate v. Beal, 119 S.W.3d 378, 380-81
(Tex. App.CFort Worth 2003, pet.
denied).  A plaintiff exercises due
diligence if he: (1) acts as an ordinary prudent person would under the same
circumstances, and (2) is diligent up until the time the defendant is
served.  $6453.00, 63 S.W.3d at 536.








Appellants complain that there is no evidence that Meeks exercised due
diligence.  The Appellants have the
burden of proof to establish the affirmative defense of statute-of-limitations
by showing that they were not served with process until after the statute of
limitations has run.  Dillard v. Parkland Hosp., 136 S.W.3d 16, 19 (Tex. App.CDallas 2002, no pet.);
Harrell v. Alvarez, 46 S.W.3d 483, 485 (Tex. App.CEl Paso 2001, no pet.).  Once they have established their
defense, the burden shifts to Meeks to establish that he exercised due
diligence in serving Appellants after the limitations period.  Lexington Ins. Co. v. Bunckingham Gate, Ltd., Inc., 993 S.W.2d 185, 190
(Tex. App.CCorpus Christi 1999, pet.
denied); Liles v. Phillips, 677 S.W.2d 802, 809 (Tex. App.CFort Worth 1984, writ
ref’d n.r.e.).  See also,
Harrell, 46 S.W.3d at 485 (citing Zale Corp. v. Rosenbaum, 520
S.W.2d 889, 890 (Tex. 1975) (holding plaintiff
had burden of proof on application of discovery rule to defendant=s statute-of-limitations
defense)).  The party claiming due
diligence should bear the burden, as it will generally have greater access to
the facts necessary to establish due diligence. 
See Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 518 (Tex. 1988) (holding that
apart from being a non-movant in a motion for summary judgment, a plaintiff had
the burden to prove the application of the discovery rule).

When an appellant
contends that there is no evidence to support an adverse finding on which his
opponent had the burden of proof, we consider only the evidence and inferences
which tend to support the contested issue and disregard all evidence and
inferences to the contrary.  Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Beard, 49 S.W.3d at 54-55.








 Meeks filed the lawsuit on May 29, 1999.  The statute of
limitations for actions upon a mechanic=s and materialman=s lien is two years from
the last day a claimant may file the lien.   
Tex. Prop. Code Ann. '' 53.158, 53.052 (Vernon
2004).  The last day Meeks could have
filed the lien was July 15, 1997; therefore, the statute
of limitations ended on July 15, 1999.  On September
 10, 1999, Meeks asked the clerk to issue citations on Watson, Skyview, and
Antley and to serve Plantation=s citation through the
Secretary of State.  Skyview was served
on September 28, and Antley on October 4. 
Plantation was served through the
Secretary of State on November 29. 
Watson was served on February 1, 2000.[1]

Based on the above
record, there is no question that Appellants were served outside the statute of
limitations.  Meeks argues that he used
due diligence in serving process Aas shown by the clerk=s record.@  He argues that Plantation was a foreign
corporation that failed to designate an agent for service of process, and
therefore had to be served through the Secretary of State.  He also points to Watson=s evasion of
service.  He further refers us to
evidence of a facsimile of the petition that he sent to Appellants= attorney on the day he
filed the lawsuit.  However, this
evidence is outside the record, and we cannot consider it.

Meeks offers no
explanation as to why he did not request issuance of citations during the
nearly two months immediately following the running of the statute of
limitations.  While Watson=s evasion of service
would indeed be reason for not effecting service, it does not explain the prior
fifty-seven day delay.  Similarly, the
fact that Plantation failed to designate an
agent for service of process does not explain the delay in the first attempt to
serve Plantation.    It is not unusual, given the circumstances of individual cases,
for a two-month delay to be considered unreasonable.  Eichel v. Ullah, 831 S.W.2d 42, 45
(Tex. App.CEl Paso 1992, no writ)
(two-month delay constituted lack of due diligence); Rios v. Northwestern
Steel and Wire Co., 974 S.W.2d 932, 934 (Tex. App.CHouston [14th Dist.] 1998,
no pet.) (two-month delay along with invalid misnomer explanation for delay
constituted lack of due diligence).

However, the length of
the delay is not the critical factor.  Keeton
v. Carrasco, 53 S.W.3d 13, 18 (Tex. App.CSan Antonio 2001, pet denied).  We need not find a nearly two-month delay to
be a lack of due diligence as a matter of law, because any  unexplained extended periods of time in which
no attempt at service of process is made constitutes a lack of due diligence as
a matter of law.  Gant v. DeLeon,
786 S.W.2d at 260; $6453.00, 63 S.W.3d at
536; Holt
v. D'Hanis State Bank, 993 S.W.2d 237, 241 (Tex. App.CSan Antonio 1999, no
pet.); Rodriguez v. Tinsman & Houser, Inc., 13 S.W.3d 47, 51 (Tex.
App.CSan Antonio 1999, pet.
denied); Perkins v. Groff, 936 S.W.2d 661, 668 (Tex. App.CDallas 1996, writ denied).  Other cases in which due diligence was found
involved explanations of clerical error, miscommunication, or inadvertence, but
Meeks offers none of these.  Harrell,
46 S.W.3d at 486; Hodge v. Smith, 856 S.W.2d 212, 216 (Tex. App.CHouston [1st Dist.] 1993,
writ denied); Valdez v. Charles Orsinger Buick Co., 715 S.W.2d 126, 128
(Tex. App.CTexarkana 1986, no writ).

Meeks=s argument is simply that
due diligence is shown by the clerk=s record which only
serves as evidence of the glaringly obvious delay.  Therefore, because Meeks offers no
explanation as to the delay between the running of the statute of limitations
and the issuance of citation, we find there is no evidence that Meeks exercised
due diligence in serving process upon Appellants.  Rodriguez, 13 S.W.3d at 51 (17 day
delay with invalid explanation constitutes lack of diligence as a matter of
law); Perkins, 936 S.W.2d at 668 (18 day delay with no explanation
constitutes lack of due diligence as a matter of law).  Meeks=s suit upon his mechanic=s and materialman=s lien is barred by the
statute of limitations.[2]  We sustain Appellants= seventh issue.




CONCLUSION

Because the addressed
issues above are dispositive, we need not consider Appellants= other issues.  We modify the judgment by deleting the
paragraphs on page three and four relating to the foreclosure of the mechanic=s and materialman=s lien and affirm the
judgment as modified.

 

 

FELIPE REYNA

Justice

 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Modified, affirmed as modified

Opinion delivered and filed September 8, 2004

[CV06]











   [1]  Watson repeatedly attempted to evade service
of process.  The process server reported
that on numerous attempts to serve Watson, employees at Watson=s
place of business claimed not to have heard of Watson or replied that Watson
was out of town.  In the meantime, at
Watson=s
home address, residents claimed that Watson was at the office.  On one occasion, Watson was in his office but
refused to answer the door.  However, we
note that Meeks did not first attempt to serve Watson by substituted service
until January, 21,
 2000.





   [2]   However, this holding does not effect the disposition
of Meeks=s breach-of-contract
claim.  The statute of limitations on a
breach-of-contract claim is four years.  Tex. Civ. Prac. & Rem. Code ' 16.051.  In the
trial court=s findings of fact, the court
found Appellants breached the contract, and Appellants do not directly
challenge this finding on appeal.